IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN BENNETT, | ) |
| Claimant, | ) No. 16 C 9188 |
| v. | ) Jeffrey T. Gilbert<br>) Magistrate Judge |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,[1] | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Susan Bennett ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security (the "Commissioner"), denying Claimant's application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. *See* [ECF No. 6]. Claimant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* [ECF No. 11]. For the reasons stated below, Claimant's motion for summary judgment is granted, and the case is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

### I. PROCEDURAL HISTORY

On November 8, 2012, Claimant filed an application for a period of disability and DIB, alleging a disability onset date of March 1, 2012. (R. 72, 190). After an initial denial on March 8, 2012 and a denial on reconsideration on July 16, 2013, Claimant filed a request for an

---
[1] Nancy A. Berryhill is substituted for her predecessor Carolyn W. Colvin pursuant to Federal Rule of Civil Procedure 25(d).

administrative hearing. (R. 112). An Administrative Law Judge ("ALJ") held a hearing on October 1, 2014, at which Claimant, who was represented by counsel, and a Vocational Expert ("VE") testified. (R. 1542–1586). A supplemental hearing was held on October 1, 2014. (R. 37–71). Claimant, again represented by counsel, a VE, and Medical Expert ("ME") testified at the supplemental hearing. *Id.*

On March 12, 2015, the ALJ issued a written decision denying Claimant's application for benefits based on a finding that Claimant has not been disabled under the Act since her alleged onset date through the time of the decision. (R. 19). The opinion followed the five-step sequential evaluation process required by Social Security Regulations. 20 C.F.R. §§ 404.1520(a) and 416.920(a). At step one, the ALJ found the Claimant has not engaged in substantial gainful activity since her alleged onset date of March 1, 2012. (R. 21). At step two, the ALJ found that Claimant had the severe impairments of severe bilateral knee arthritis and morbid obesity. (R. 22). At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (R. 23).

Before step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), determining that she can sit for a total of six hours, and stand or walk in combination for a total of two hours in an eight-hour workday; can lift and carry up to ten pounds occasionally, but can lift and carry five pounds frequently; can only occasionally climb ladders, ropes, or scaffolds, and crouch, crawl, or kneel; and can never be exposed to unprotected heights, heavy equipment, or operating machinery. (R. 24). Based on this determination and the testimony of the two VEs, the ALJ

concluded at step four that Claimant was capable of performing her past relevant work as an accounts payable clerk, a licensing clerk, a research assistant II, and a customer service representative. (R. 31). Thus, the ALJ found that Claimant was not disabled under the Act. (R. 32).

The Social Security Appeals Council subsequently denied Claimant's request for review, and the ALJ's decision became the final decision of the Commissioner. (R. 1-6); *see Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms*, 553 F.3d at 1097.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. ANALYSIS

Claimant presents three primary arguments for review: (1) the ALJ's credibility determination is unsupportable; (2) the ALJ violated the treating physician rule; and (3) the ALJ failed to account for all of Claimant's limitations in his RFC determination. The Court finds that the ALJ failed to properly evaluate the threating physician's opinion. Because this error requires remand, the Court need not address Claimant's other arguments.

**A. The ALJ Did Not Properly Evaluate the Treating Physician's Opinion**

Because a treating physician usually is closely familiar with a claimant's condition and the progression of her impairments, the opinion of a claimant's treating physician is entitled to controlling weight as long as it is supported by medical findings and "is not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016). An ALJ must provide "good reasons" for the weight he gives to a treating source's medical opinion. *See Collins v. Astrue*, 324 F. App'x 516, 520 (7th Cir. 2009); 20

4

C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our . . . decisions for the weight we give your treating source's opinion.").

Dr. Cotter is Claimant's treating physician and has treated Claimant since September 25, 2009. (R. 1335). He practices general internal medicine. *Id.* In a medical assessment of condition and ability to do work-related activities completed on February 19, 2013, Dr. Cotter opined that Claimant could walk for about four hours in an eight-hour workday and sit for at least six, but that she would need a fifteen-minute break every hour to alleviate joint stiffness. (R. 1336). He opined Claimant could lift twenty pounds occasionally, ten-to-fifteen pounds frequently, and could carry ten-to-fifteen pounds a distance of five-to-ten feet. *Id.* He further opined Claimant is limited in her ability to bend by poor knee flexibility and strength, in her ability to push/pull only by the distance needed to walk due to her knees, and in grasping/handling/manipulating objects only with fine manipulation of small objects due to peripheral neuropathy. *Id.*

Dr. Cotter also opined Claimant is not limited in her ability to reach, see, hear, or speak, and is not limited due to environmental restrictions. (R. 1337). He indicated that she experienced side effects from her medication, namely sedation from Neurontin and Tramadol, low blood sugar from Glipizide, and muscle aches from Lipitor. *Id.* He concluded Claimant's drowsiness was not expected to further diminish her ability to walk, stand, or sit upright. *Id.* Dr. Cotter further concluded Claimant would have marked limitation due to her symptoms in her ability to complete a normal workday and workweek without interruption and to perform at a consistent pace without an unreasonable number of rest periods and that she would reasonably be expected to experience significant deficiencies in sustained concentration, persistence, and pace. *Id.* Dr. Cotter opined the same limitations at the time of Claimant's alleged disability onset date. *Id.*

5

The ALJ gave several reasons for giving Dr. Cotter's opinion "limited weight generally." (R. 30). First, he stated "the medical evidence shows [Dr. Cotter] has not seen [Claimant] in approximately one and one-half years and he no longer has longitudinal familiarity." *Id.* Presumably, the time period to which the ALJ referred is from Claimant's last visit with Dr. Cotter to the date Dr. Cotter submitted his functional assessment in February 2013. Both Claimant and the Commissioner agree this is a blatant misstatement of the record. Claimant and the Commissioner agree that Dr. Cotter treated Claimant on at least two instances, one in September 2012 and the other in October 2012, during that time period. (R. 551; R. 541).

The Commissioner argues that, despite "misdescrib[ing] the evidence," the ALJ's reasoning still is valid. The Court is not convinced. An ALJ is required to build a logical bridge between the evidence and his conclusion. When the evidence cited as the basis for a conclusion is blatantly inaccurate, the conclusion is called into question. Dr. Cotter did not lack the longitudinal familiarity with Claimant's symptoms that would discount the legitimacy of his opinion. He treated Claimant for a period of five years before the hearing with the ALJ, and he last saw Claimant the month before she applied for disability benefits. There is no indication that Claimant needed to see Dr. Cotter during the period before the hearing. Dr. Cotter completed his medical assessment within four months of Claimant's last visit. The ALJ clearly erred by discrediting Claimant's treating physician on the basis of a lack of longitudinal familiarity with Claimant's conditions.

Next, the ALJ discounted Dr. Cotter's assessed restrictions because "he refers to cumulative medical diagnoses, rather than a single or specific source of impairment that reasonably might correlate [sic] the limitations he assigns." (R. 30). Again, this rationale is difficult to understand. The assessment Dr. Cotter completed contains his responses to a set of

6

questions. He referred to each individual diagnosis he had made of Claimant and provided his basis and prognosis for each. He lists each clearly and individually. When asked to assess Claimant's limitations, he did so while providing support from his diagnoses. Moreover, many of the pertinent questions regarding Claimant's limitations simply are yes or no questions with no direction for further explanation. (R. 1335-37). Dr. Cotter likely could have provided further explanation of the supporting evidence for each diagnosis, but that by itself is not sufficient to question his actual diagnoses or prognoses. In light of this record, it is difficult to understand the ALJ's rationale that Dr. Cotter improperly referred to cumulative diagnoses rather than provide a single source for all of Claimant's impairment. Further, an ALJ is required to take into account all of Claimant's impairments, including those that are not severe. 20 C.F.R. § 404.1545(a)(2). It is unclear to the Court why the ALJ supported his conclusion with this puzzling rationale. There does not appear to be any logical bridge between the evidence and this conclusion, and it certainly is not a sufficient reason, as stated, to discount a treating physician's opinion.

The ALJ also cited the opinion of Dr. Morton Tavel, M.D., the ME who testified during the supplemental hearing, in discounting Dr. Cotter's assigned limitations. The ALJ discounted the joint stiffness that led Dr. Cotter to opine that Claimant required fifteen minute breaks once every hour to alleviate symptoms because the ME testified that joint stiffness is "very subjective and it ordinarily does not occur to [the] extreme that Dr. Cotter was describing." (R. 30). Further, the ME "did not see objective evidence of signs and findings of this it [sic] in the record." *Id*. However, the same portions of the ME's testimony show why his assessment of Claimant's medical records does not provide a good enough reason by itself to discount Dr. Cotter's opinion. When asked about Claimant's joint stiffness, the ME responded:

> [J]oint stiffness is very subjective. It ordinarily does not occur to that extreme that . . . [Dr. Cotter] was describing in [his] report. I don't see any

7

other place in the record that would support that conclusion, and that's very difficult to find evidence of that nature because of the subjective nature it shows. **So, I would have to plead . . . ignorance on that subject, but I'd be highly doubtful [that Claimant's impairments would reasonably cause the reported joint stiffness], let's put it that way**.

(R. 55) (emphasis added). That joint stiffness is not ordinarily as extreme as Dr. Cotter assessed Claimant's joint stiffness to be irrelevant. The question is whether the joint stiffness *that Claimant actually experiences* is as severe as Dr. Cotter's limitations suggest. Because joint stiffness, as the ME clearly acknowledged, is "very subjective," what the ME regarded as ordinary for that condition is not necessarily a relevant point of comparison for Claimant. The ME concluded that he would be highly doubtful Claimant's joint stiffness was as severe as reported. However, it is an inherently subjective complaint that Dr. Cotter directly considered during his extended time treating Claimant, and the ME is not in a position to make a supportable conclusion that Dr. Cotter's assessment was not appropriate in this specific instance. The ME admitted that his assessment of Claimant's subjectively reported condition was based on generalities and not specific to Claimant; in fact, the ME admitted he was "ignoran[t]" of Claimant's actual condition. Under these circumstances, the ALJ's reliance on this portion of the ME's opinion is not supported by substantial evidence.

The ALJ also relied on the ME's testimony to dismiss Claimant's side effects from medication that led Dr. Cotter to opine that Claimant has marked limitations in maintaining concentration and pace. The ALJ supported her reliance on the ME's testimony by stating the ME "testified that as to sedation side effects from medication, it is just Dr. Cotter's opinion, and that almost any medication lists sedation as a side effect. However, in [the ME's] experience, neither one of [the medications] has been prominent in producing sedation in his patients." (R. 30). The ME did testify to each of these reasons, but he also qualified his answers much more

8

than the ALJ's decision lets on. The ME stated that Claimant alleges "loss of memory, or mental function, and I don't see much documentation there and perhaps a mental evaluation or psychological evaluation might be able to shed some light on that alleged problem. . . . I'm not in a position to really judge that either in a positive, or negative way." (R. 49). When asked whether the medication has produced those side effects, the ME responded his answer "would be speculation." *Id.*

Claimant's representative asked the ME whether he agreed or disagreed with Dr. Cotter's opinion that Claimant's medications would cause the identified side effects. (R. 57). The ME emphasized that Dr. Cotter's opinion is "just an opinion," and he did not think there was "any objective evidence to either confirm or refute that opinion" but "suggested perhaps psychological testing might shed some more light on the subject." *Id.* The ME then, however, confirmed that sedation is a side effect of Neurontin and Tramadol but that, in his experience, neither has been "very prominent in terms of producing complaint of sedation in [his] patients." (R. 58). The ME acknowledged he was not in the position to make a reliable evaluation of the effect of medication on Claimant's mental ability, suggested further testing would be appropriate, and referred generally to a lack of evidence and the norm in his patients. None of these reasons legitimately undermines Dr. Cotter's opinion of the effect of these medications on Claimant based upon his actual examination of Claimant and his longitudinal treatment history. As such, the ALJ's reliance on these portions of the ME's testimony is not a sufficient basis upon which to discount a treating physician's opinion.

Before concluding that Dr. Cotter's opinion merited "limited weight generally," the ALJ also stated:

> The impairments Dr. Cotter asserts as supporting restriction either are
> well-controlled, or are not associated with signs and findings of medical

9

limitation, or have been shown as short-term medical issued [sic] only. . . . However, since Dr. Cotter has cumulatively placed equal weight for his judgment on impairments that have only a slight effect on functional impact, one reasonably cannot infer his opinion is well-supported.

(R. 30). While many of Claimant's diagnoses certainly do not cause limitations—the ALJ listed hypertension, diabetes, osteoporosis, fatty liver disease, hypothyroidism, hyperlipidemia, Sjogren's syndrome, and alleged stage III kidney failure, the ALJ's explanation that Dr. Cotter has "cumulatively placed equal weight for his judgment" on these minimally impactful impairments is without basis. As previously discussed, Dr. Cotter ties the limitations in question directly to Claimant's symptoms. The fifteen-minute break every hour to stretch is to alleviate joint stiffness. The limitation on her ability to finely manipulate small objects is linked to peripheral neuropathy. The marked limitation in concentration and pace is tied to the side effects from her pain medication. Regardless of whether the ALJ found these subjective complaints to be not entirely credible, the explanation that Dr. Cotter somehow placed equal weight on each of the impairments is unfounded.

With regard to Claimant's alleged neuropathy, the ALJ made another inference that is not supported by the record. Specifically, the ALJ stated that Claimant's neuropathy "does not appear to have surfaced" in Dr. Cotter's notes, but "regardless, he provided no signs or findings to document the condition medically. It is doubtful that neuropathy would be present if diabetes was well controlled." (R. 30). As an initial matter, Dr. Cotter notes in the prognosis section of his assessment that Claimant's neuropathy is life-long. (R. 1335). The ALJ did not address this, despite acknowledging that Claimant's subsequent treating physician, Dr. Jennifer Ota, continued to treat her for peripheral neuropathy. (R. 23; R. 1476). It is true that Dr. Cotter does not list any medical findings beyond a diagnosis and prognosis, but the ALJ cannot substitute his own opinion for Dr. Cotter's opinion. The ALJ clearly did so with the conclusory statement that

10

"[i]t is doubtful that neuropathy would be present if diabetes was well controlled," especially because the alleged origin for Claimant's neuropathy was her medication, not her diabetes. (R. 1552). This, too, is an impermissible reason to discount the treating physician's opinion.

Finally, in addition to the ME's opinion doubting the need for breaks due to joint stiffness as discussed above, the ALJ also cited Claimant's one-way car trip to Atlanta. He concluded the seventeen hours in a car "makes it improbable that she could not tolerate extended sitting, absent an hourly 15-minute break." (R. 31). However, Claimant testified that her husband drove, and they took breaks every hour so Claimant could move her knees and do exercises given to her by a physical therapist. (R. 1548). Moreover, that Claimant took a car trip to Atlanta, stopping every hour or so to do her exercises does not mean she can work full-time without interruption. This is another impermissible inference that cannot be used to discount Dr. Cotter's opinion.

## B. The ALJ's Credibility Assessment

It is clear that the ALJ's credibility assessment of Claimant influenced his treatment of Dr. Cotter's opinion and led him to rely on the ME's opinion. While a negative credibility assessment is a recognized basis for doubting a claimant's subjective reports of the intensity of her pain, it is not a sufficient reason here to disregard a treating physician's opinion in favor of the opinion of a doctor who did not treat the claimant, who admitted he did not really have an evidentiary basis to disagree with Claimant's treating physician, and who supported any inconsistent opinions he provided without any evidence in the record.

The Court declines to make a finding on whether to the ALJ's credibility assessment was "patently wrong." However, greater elaboration and explanation is necessary to ensure a full and fair review of the evidence particularly in light of the possibility that the ALJ's credibility determination also may have contributed to the ALJ's decision to give limited weight to the

11

treating physician's opinion. *See Hively v. Astrue*, No. 09 CV 24, 2010 WL 670226, at *8 (N.D. Ind. Feb. 18, 2010) (*citing Zurawski*, 245 F.3d at 888). For instance, accepting more conservative treatment for persistent pain that can flair up instead of taking more aggressive medication that carries more severe side effects is not a reason to discount Claimant's account of her pain. (R. 27-28). Claimant also should not be penalized for attempting to seek work or for performing a daily activity that does not indicate her ability to work full-time (*e.g.*, one instance of gardening or one long car trip). (R. 26, 31). The ALJ clearly believed Claimant exaggerated her subjective reports of her pain, but an ALJ cannot substitute this opinion for that of a treating physician without more.

Remand is required for a proper evaluation of the medical opinion evidence. On remand, the ALJ should re-evaluate Claimant's complaints of pain and related limitations, with due regard to the full range of medical evidence, sufficiently articulate how he evaluates that evidence, and then explain the logical bridge from the evidence to his conclusions.

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion for Summary Judgment [ECF No. 11] is granted. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 19, 2017